**Stanley L. SHARP**

v.

**COOPERS & LYBRAND**

**Civ. A. No. 75–1313.**

United States District Court,
E. D. Pennsylvania.

June 11, 1980.

Theodore R. Mann, Philadelphia, Pa., for plaintiff.

Matthew J. Broderick, Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

In this section 10(b) securities fraud class action suit, juries have found the defendant accounting firm liable for material misrepresentations and omissions in an opinion letter used as a selling device for oil well investments,[1] and have assessed the worth of the oil wells at the time of purchase in 1971.[2] Three post trial matters must be resolved in order to mold the verdicts for plaintiffs Stanley Sharp, H. James Conaway, Jr., and Sam Geftic in accordance with the jury's findings: the appropriateness of

---

[1]. The first jury trial took place from February 27 through March 10, 1978. Opinion on post trial motions is reported in *Sharp v. Coopers & Lybrand*, 457 F.Supp. 879 (E.D.Pa.1978).

[2]. The second jury trial took place from May 12 through May 19, 1980. In addition to assessing the value of the purchase, the jury answered special interrogatories finding reliance and due diligence on the part of plaintiffs, and that the suit was brought within the applicable statute of limitations period. With regard to the actual value of the investment, the jury found that a one-eighth limited partnership interest in the 1971 WMC Ohio Producers Program as of late December, 1971, was $1240. Interrogatory No. 4, May 19, 1980.

an award of prejudgment interest, the effect of the availability of a single tax deduction on the damage award, and the amount of James Conaway's damages.

*1. Prejudgment Interest*

■ In tort actions as a general rule prejudgment interest is not awarded on unliquidated claims, but, even when damages to be recovered are unliquidated, interest may be awarded when in the trial court's discretion fair compensation requires it. *E. g., Rea v. Ford Motor Co.*, 560 F.2d 554, 558 (3d Cir.), *cert. denied*, 434 U.S. 923, 98 S.Ct. 401, 54 L.Ed.2d 281 (1977); *Sun Shipbuilding & Drydock Co. v. United States Lines, Inc.*, 439 F.Supp. 671 (E.D.Pa.1977), *aff'd*, 582 F.2d 1276 (3d Cir. 1978), *cert. denied*, 439 U.S. 1073, 99 S.Ct. 846, 59 L.Ed.2d 40 (1979).

■ In securities actions, the award of prejudgment interest does not generally turn on the characterization of the damages as liquidated or unliquidated,[3] but rather is a matter of discretion for the trial court and is determined by a standard of fairness. *Blau v. Lehman*, 368 U.S. 403, 414, 82 S.Ct. 451, 457, 7 L.Ed.2d 403 (1962); *Gould v. American-Hawaiian S.S. Co.*, 535 F.2d 761, 784–85 (3d Cir. 1976); *Wolf v. Frank*, 477 F.2d 467, 479 (5th Cir.), *cert. denied*, 414 U.S. 975, 94 S.Ct. 287, 38 L.Ed.2d 218 (1973).[4]

In an earlier decision I determined that the appropriate measure of damages in this § 10(b) case was the out-of-pocket measurement, *i. e.*, "the difference between the price [the plaintiffs] paid for their investment and what it was actually worth at the time of purchase." *Sharp v. Coopers &*

*Lybrand*, 83 F.R.D. 343, 347 (E.D.Pa.1979). In the case of a defrauded buyer, as here, the First Circuit in a frequently cited opinion has held that "[D]amages are to be reckoned solely by 'the difference between the real value of the property at the date of its sale to the plaintiffs and the price paid for it, with interest *from that date . . .*'" *Janigan v. Taylor*, 344 F.2d 781, 786 (1st Cir.), *cert. denied*, 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965) *quoting Sigafus v. Porter*, 179 U.S. 116, 125, 21 S.Ct. 34, 37, 45 L.Ed. 113 (1900) (emphasis added); *Estate Counseling Service, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 303 F.2d 527, 533 (10th Cir. 1962). In *Sigafus*, the Supreme Court discussed earlier cases that applied this damage standard to claims of fraudulent misrepresentation whereby plaintiffs were induced to buy shares. Without so denominating the issue as one of liquidated or unliquidated damages, the analysis underlying these cases is the functional equivalent of a determination that the damages to be recovered are liquidated. As applied to this case, the reasoning would be that plaintiffs advanced a sum certain ($8,125 for a one-eighth limited partnership interest) and received something worth less than they had been told to expect. The plaintiffs were thus deprived of the use of that sum (by definition an ascertainable amount), and proper compensation should include interest from the date of purchase.[5]

■ In later securities cases, courts have used two different dates for the assessment of damages, some holding that it is the date of purchase; others, the date of discovery

3. *Compare Nye v. Blyth Eastman Dillon & Co.*, 588 F.2d 1189, 1200 (8th Cir. 1978) where in a securities case the Court of Appeals found no abuse of discretion in the trial court's conclusion that no interest should be awarded on damages that were unliquidated and could not be easily measured by a known standard. This conclusion was stated in one sentence with no explanation or elaboration.

4. Whether the damages can be readily ascertained in a securities action may be of importance in determining the fairness of assessing prejudgment interest.

5. Unlike this case, in *Gould* the court stated that the damage award was to redress a violation of § 14(a) by a materially deficient proxy statement and letter, and not "to make the plaintiffs whole for funds to which they were legally entitled . . . ." 535 F.2d at 785. In *Sharp* the § 10(b) violation caused plaintiffs to part with a sum certain for a security fraudulently represented as having a value it did not have. The damage award is compensatory and is indeed designed to make plaintiffs whole for funds they would not have parted with had there been no fraud as perpetrated by the defendant in its opinion letter.

of the fraud or when the plaintiff reasonably should have discovered the fraud, *i. e.*, the date the cause of action accrued. *See Harris v. American Investment Co.*, 523 F.2d 220, 225–27 (8th Cir. 1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 784, 46 L.Ed.2d 643 (1976) and the cases cited therein. Here, the date of purchase is the proper measure, since the interest in the well was not a traded security whose value fluctuated with the vicissitudes of the market. Rather, the actual value of the security in 1971 is measured by the anticipated return in gas and oil on a representative well in the 1971 WMC Ohio Program over the life of the well. I thus conclude that prejudgment interest from the date of purchase would be appropriate compensation in this case. The remaining question is whether as a matter of fairness interest should be awarded. *Thomas v. Duralite Co.*, 524 F.2d 577, 589 (3d Cir. 1975) ("Interest is not to be recovered merely as compensation for money withheld but, rather, in response to considerations of fairness.")

In *Norte & Co. v. Huffines*, 416 F.2d 1189 (2d Cir. 1969), *cert. denied sub nom., Muscat v. Norte & Co.*, 397 U.S. 989, 90 S.Ct. 1121, 25 L.Ed.2d 396 (1970), the Second Circuit outlined the factors to be considered in addition to fundamental considerations of fairness in determining whether prejudgment interest should be awarded:

1) degree of personal wrongdoing;
2) whether such interest would be truly compensatory;
3) the availability of alternative investment opportunities to the plaintiff;
4) the length and reason for the time gap between the violation and award of judgment.

*See also, Fox v. Kane-Miller Corp.*, 398 F.Supp. 609 (D.Md.1975), *aff'd in part and remanded on other grounds*, 542 F.2d 915 (4th Cir. 1976).

First, in the 1978 *Sharp* trial, the jury found that the defendant's employee had perpetrated a fraud with intent or recklessness and that the defendant was responsible for its employee's actions. In the post trial opinion I found that the defendant was or should have been aware that the opinion letter would be disseminated to potential purchasers. *Sharp*, 457 F.Supp. at 887. Indeed in the second trial the jury found that the plaintiffs would not have purchased their investments had it not been for the fraud perpetrated in the defendant's opinion letter.

Second, an award of interest here would be compensatory because each plaintiff was "deprived" of a principal sum ($8,125 for a one-eighth interest) at a clearly defined date (December 1971, the date of purchase), *Norte & Co., supra*, 416 F.2d at 1192.

Third, as a result of the purchase of the securities, plaintiffs had a part interest in an oil well bought for a promised double deduction tax shelter that in fact offered only a single deduction. Plaintiffs were therefore left with a well and not a tax shelter, and the well's value was in the monetary return from gas and oil produced by it over its productive life. Thus the availability of alternative investment opportunities with the security they had purchased is not an applicable measurement in this case.

Fourth, the jury in the second trial found that the plaintiffs did not know nor reasonably should have known before May 7, 1974, of the defendant's fraud. The suit was brought May 8, 1975, and tried in 1978. There was no lengthy delay between knowledge and action on the basis of that knowledge. The time delay between filing of the complaint and the first trial was neither unduly lengthy nor attributable to either party. That is, the time gap was not intentionally prolonged by the plaintiff.

█ In sum, plaintiffs invested more than $8,000 for a one-eighth interest in an oil well in 1971 for legitimate tax shelter purposes, were defrauded as to the tax consequences and thereby lost the use of their investment money from the time of purchase.[6] To compensate the plaintiffs for

---

6. As noted above, the jury in the second trial found that the plaintiffs would not have purchased the security had they known of the material misrepresentations and omissions in the defendant's opinion letter, *i. e.*, that there was no double tax deduction for the purchase.

this loss, I find an award of prejudgment interest in this case to meet the applicable standards of fairness.

### 2. Single Tax Consequences

■ The defendant asks that the damage verdict (based on the jury's answers to special interrogatories) be adjusted on the basis that the plaintiffs got a single tax deduction, even though not the double deduction as represented. After the first trial on liability, I determined that for the second trial on damages the out-of-pocket rule was the appropriate measure of damages. *Sharp*, 83 F.R.D. at 348. In that opinion I specifically rejected a theory of damages based on the tax consequences of the plaintiffs' purchases for reasons unnecessary to repeat now. *Id.* at 347–48. That determination is the law of the case and precludes granting of the defendant's request to consider the tax consequences of the purchase in molding the damage verdict.

### 3. Conaway's Damages

■ Plaintiffs sued for the amount they invested minus the actual value of what they got. In the second trial, the jury determined that the actual value of a one-eighth interest was $1,240, which is an expert's estimate of what a representative well in the 1971 WMC Ohio Program would have yielded over its life span. The investment was a speculative one, and plaintiffs ran a risk of no return. In fact, plaintiffs Sharp and Geftic got no return on their wells. Nevertheless, the value in 1971 of the security they purchased could only be estimated, and thus that amount is subtracted from the sum they invested and the difference (plus interest) is their recoverable damage.

Unlike Sharp and Geftic, Conaway in fact got a $1,932 return on his investment. Since the measure of damages is the difference between actual value and price paid, Conaway's investment of $8,125 is to be reduced by $1,932 to arrive at his recoverable damages. Plaintiffs have advanced the argument that if $1,932 is to be subtracted from Conaway's award, since Sharp and Geftic got no return, nothing should be subtracted from their award. Although this would seem to be consistent with the rationale of Conaway's award, in fact it gives Sharp and Geftic a hindsight cushioning of what was only a speculative investment. Although the plaintiffs did not anticipate "speculating," as it were, on the tax consequences of the investment, once the fraud was perpetrated and relied on by the plaintiffs to their detriment, the plaintiffs were indeed left with a risk investment, *i. e.*, what they would get from their wells. That risk is to be measured by an anticipated return, or an actual return *if there was one* as in Conaway's case. To do otherwise would turn Sharp's and Geftic's speculative investment into a no-loss risk, that is, no risk at all.