AMERICAN BANK & TRUST
COMPANY, Plaintiff,

v.

Jan L. WALLACE, et al., Defendants.

Civ. A. No. 81–124.

United States District Court,
E. D. Kentucky.

Dec. 16, 1981.

J. Montjoy Trimble, Trimble & Henry, Anderson & Anderson, Lexington, Ky., for plaintiff.

William C. Shouse, Shouse & Burrus, Lexington, Ky., for defendants Jan L. Wallace, Wallace Leasing Co., Inc. and Anna L. Wallace.

R. David Lester, Stoll, Keenon & Park, Lexington, Ky., for defendant First Sec. Nat. Bank & Trust Co.

David A. Weinberg, P.S.C., Lexington, Ky., for defendants E. L. Wallace and Neda Wallace.

SCOTT REED, District Judge.

American Bank and Trust Company (American Bank), a Kentucky banking cor-

poration, brought this action on July 7, 1981, against defendants Jan L. Wallace, E. L. Wallace, Ann Wallace, Neda H. Wallace (Wallaces), Jan Michael Wallace, Wallace Leasing Company, Inc., and First Security National Bank and Trust Company (First Security). The action stems from the circumstances surrounding a bank loan from American Bank to the Wallaces.

The complaint consists of four separate counts. Count I of the complaint seeks to recover for alleged violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Section 78j (1934 Act), and Rule 10b–5, 17 C.F.R. Section 240.106–5, promulgated thereunder by the Securities and Exchange Commission. Count II of the complaint alleges violations of the Securities Act of 1933 (1933 Act). Count III of the complaint seeks damages for alleged violations of Section 17(a) of the 1933 Act, 15 U.S.C. Section 77q. Finally, Count IV alleges violation of the Kentucky securities statute, K.R.S. Section 292.320.

Jurisdiction is purportedly grounded upon Section 27 of the 1934 Act (15 U.S.C. 78aa), Section 22 of the 1933 Act (15 U.S.C. 77v), and principles of pendent jurisdiction.

The action is presently before the Court upon defendants'[1] motion to dismiss the complaint upon the following grounds:

(a) American Bank has failed to state any claim upon which relief may be granted, Rule 12(b)(6), Fed.R.Civ.P.

(b) American Bank has failed to plead with the required particularity, Rule 9(b), Fed.R.Civ.P., and

(c) This Court lacks subject matter jurisdiction, Rule 12(b)(1), Fed.R.Civ.P.

On October 6, 1981, the Court heard oral arguments of counsel. Plaintiff's counsel conceded that Count III of the complaint should be dismissed by the Court in light of this Court's ruling in *Ingram Industries, Inc. v. Nowicki*, 502 F.Supp. 1060 (E.D.Ky. 1980) which held that Section 17(a) of the 1933 Act did not provide a private right of

---

1. The record reveals that Jan Michael Wallace was not served with process because the U. S. Marshall was unable to locate him. Therefore, Jan Michael Wallace does not join in this motion.

action. Accordingly, counsel for both parties agreed that the dispositive remaining issue before the Court is whether the promissory note purchased by American Bank from the Wallaces constitutes a "security" within the ambit of the 1933 and 1934 Act.

## I. FACTUAL BACKGROUND

On June 1, 1981, Jan L. Wallace contacted American Bank for the purpose of inducing American Bank to lend the Wallaces the sum of $300,000. Jan L. Wallace stated that the loan was to be used by him for the purpose of starting a new business venture. The new business was to be known as Wallace Leasing Company and would engage in the leasing of automobiles. He further stated that the loan would be repaid from proceeds to be derived from the sale of Budget Rent-A-Car, Lexington, Kentucky, and Budget Rent-A-Car, Knoxville, Tennessee, businesses which Jan L. Wallace owned or controlled.

Based upon these representations, American Bank, on June 3, 1981, loaned the Wallaces the principal amount of $300,000 in return for a promissory note executed by the Wallaces. (Exhibit A). Principal and interest were due thirty (30) days thereafter. The interest rate was fixed at one and three-fourth (1¾) percent above American Bank's prime rate.

Subsequently, American Bank received information that Jan L. Wallace and these companies that he either owned or controlled were engaged in the illegal and unlawful practices of "double floor planning" and "check kiting" and that a portion of the $300,000 would be used to pay off a loan from First Security to Wallace Motors. Jan L. Wallace failed to disclose this to American Bank during the loan negotiations.

On the afternoon of June 4, 1981, American Bank officials questioned Wallace regarding the above unlawful practices. Jan L. Wallace reiterated his previous representations and denied the above allegations. Subsequently, the Wallaces defaulted on the note.

Plaintiff alleges that the representations made by Jan L. Wallace during the loan negotiations were "false, fraudulent, and untrue." Plaintiff further alleges that Jan L. Wallace was aided and abetted by and conspired with Wallace Motors, Jan Michael Wallace, Wallace Leasing, E. L. Wallace, Anna Wallace, Neda Wallace, and First Security to commit alleged violations of the 1933 and 1934 Act.

Originally, plaintiff sought damages in the amount of $300,000 dollars, together with interest at the rate of American Bank's prime plus 1¾% per annum from June 4, 1981. However, an amended complaint filed August 14, 1981, indicates that plaintiff now seeks damages in the mitigated sum of $159,408.29 together with interest "thereon after July 20, 1980 at the prime rate of American Bank plus 1¾% per annum."

## II. THE ISSUE WHETHER THE PROMISSORY NOTE CONSTITUTES A "SECURITY"

The recent Sixth Circuit decision in *Union Planters National Bank v. Commercial Credit*, 651 F.2d 1174 (6th Cir. 1981), provides this Court with the necessary guidance to resolve the critical issue. For the reasons that follow, this Court concludes that the promissory note purchased by American Bank does not constitute a "security."

Section 3(a)(10) of the 1934 Act, 15 U.S.C. Section 78c(a)(10) provides:

(a) When used in this title, unless the context otherwise requires—

(10) The term "security" means any *note*, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a "security;" or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of

the foregoing; *but shall not include* currency or *any note*, draft, bill of exchange, or banker's acceptance *which has a maturity at the time of issuance of not exceeding nine months*, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited. (Emphasis supplied).

Although the 1933 Act definition[2] differs somewhat, both have been treated as "virtually identical." *See Tcherepnin v. Knight*, 389 U.S. 332, 335–36, 88 S.Ct. 548, 552–53, 19 L.Ed.2d 564 (1967); *Union Planters National Bank, supra* at 1180. A literal application of the definition would seem to be dispositive of the issue.[3] A literal application, however, has been disapproved by the Supreme Court in *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 848, 95 S.Ct. 2051, 2058, 44 L.Ed.2d 621 (1975). *See also McClure v. First National Bank of Lubbock*, 497 F.2d 490, 493–94 (5th Cir. 1975).

Instead, the Supreme Court has focused on the legislative purpose[4] behind the Acts and the economic realities underlying a transaction in developing a test, which in " 'shorthand form' ":

> . . . embodies the essential attributes that run through all of the Court's decisions defining a security. The touchstone is (1) the presence of an investment (2) in a common venture (3) premised on a reasonable expectation of profits (4) to be derived from the entrepreneurial or managerial efforts of others.

*Forman, supra* at 852, 95 S.Ct. at 2060.

## PRESENCE OF AN INVESTMENT

As counsel for both sides correctly stated, the United States Courts of Appeals are split[5] as to what mode of analysis is appropriate in determining which investment transaction the Securities Acts were meant to cover. The Sixth Circuit has adopted what has been commonly referred to as the "risk capital" test.[6] The test, enunciated by the Ninth Circuit in *Great Western Bank and Trust v. Kotz*, 532 F.2d 1252, 1257 (9th Cir. 1976), has been confined primarily to loans used to capitalize an investor's business where the lender risks loss. *AMFAC Mortgage Corp. v. Arizona Mall of Tempe*, 583 F.2d 426 (9th Cir. 1978); *Great Western Bank v. Kotz, supra; United California Bank v. THC Financial Corp.*, 557 F.2d 1351 (9th Cir. 1977).

The risk capital analysis focuses on six criteria:

(1) time,

(2) collateralization,

(3) form of the obligation,

(4) circumstances of issuance,

(5) relationship between the amount borrowed and the size of the borrower's business, and

(6) the contemplated use of the funds.

As a general rule, "the longer one's money is held by another, the greater the risk of loss becomes for the one contributing the money." *AMFAC Mortgage Corp., supra* at 432. American Bank's money was not at risk for a very long time. The promissory note was due and payable 30 days after the date of execution. Such a short term duration is not indicative of an expenditure of risk capital.

---

**2.** 15 U.S.C. Section 77b(1).

**3.** The statutory definition states that a note which has a maturity date exceeding nine months is not a security.

**4.** The Legislative purpose was succinctly stated by the Supreme Court in *Forman*, 421 U.S. at 849, 95 S.Ct. at 2059, "The primary purpose of the Securities Acts of 1933 and 1934 was to eliminate serious abuses in a largely unregulated securities market. The focus of the Acts is on the capital market of the enterprise system: the sale of securities to raise capital for profit making purposes, the exchanges on which se-

curities are traded, and the need for regulation to prevent fraud and to protect the interests of investors.

**5.** *See S.E.C. v. Diversified Industries, Inc.*, 465 F.Supp. 104 (D.D.C.1979) which sets out the various tests employed by the different circuits. *See also* 39 A.L.R.Fed. 357.

**6.** The ultimate inquiry of this test is whether the holder of the note has contributed risk capital subject to the managerial and entrepreneurial efforts of others.

Plaintiff's counsel states in his brief that the loan was not collateralized. If a lender is unsecured, then repayment of a loan is more dependent upon the efforts of the borrower. Although the Court is mindful that all facts are to be liberally construed in favor of the party opposing the motion to dismiss, *Pessin v. Keeneland Association*, 45 F.R.D. 10, 13 (E.D.Ky.1968), a reading of the amended complaint reveals that a portion of the $300,000 was collateralized. The amended complaint reads:

34. On or about July 6, 1981, AMERICAN BANK caused to be sold, 7,200 shares of Allright Auto Parks for $215,000 and 90 shares of Allright Auto Parks for $2,677.50.

35. These shares of stock were pledged to AMERICAN BANK by E. L. WALLACE as collateral security for a certain Note in the original principal amount of $150,000.00, dated on or about June 2, 1980;

36. By reason of the terms, provisions and conditions of the Pledge Agreement, which secured said Note, dated June 6, 1980, wherein and whereby said shares of stock were pledged with AMERICAN BANK, AMERICAN BANK applied part of the proceeds from such sale in part payment of the Note, leaving a principal balance due AMERICAN BANK on the Note of $159,408.29, together with interest thereon after July 20, 1980 at the prime rate of AMERICAN BANK, plus 1¾% per annum.

"The existence of collateral is strongly suggestive of a commercial loan." *Union Planters National Bank, supra* at 1182.

■ The form of the obligation supports the position that a commercial loan and not a security was contemplated by the parties. Throughout his rendition of facts, plaintiff's counsel refers to the transaction as a loan. The promissory note contains a default provision. Such a clause is not a typical characteristic of a security. *AMFAC Mortgage Co., supra* at 434.

The circumstances surrounding the issuance of the promissory note militate against finding an investment here. American Bank was aware that the loan proceeds were to be used to finance a new car leasing business. American Bank was also aware that the borrower was experienced in the car rental business. Plaintiff was assured that the loan would be repaid from the sale of two Budget Rent-A-Car Companies owned or controlled by Jan L. Wallace. Finally, there is no indication that interest in the note was offered to the public at large.

The one factor not discussed by this Court may support plaintiff's argument: The relationship between the amount borrowed and the size of the borrower's business.[7] Since the Court is devoid of any evidence pertaining to this matter, it will be resolved in favor of American Bank.

Reviewing the above factors as a whole, the Court concludes that an investment was not involved in this particular case.

COMMON VENTURE

The second prong of the *Howey-Forman* test necessitates the finding of a common venture. To determine whether a common venture is present, the courts have identified two types of alliances: vertical and horizontal.

This Circuit explained its approach in *Curran v. Merrill Lynch, Pierce, Fenner and Smith*, 622 F.2d 216 (6th Cir. 1980), *cert. granted*, 101 S.Ct. 1971 (1981). In *Curran*, the court adopted the horizontal commonality. *Id.* at 222. Horizontal commonality, the Court noted, "best comports with the language of *Howey*, because in a common enterprise all investors must share a common fortune." *Union Planters National Bank, supra* at 1183. *See also Curran, supra* at 222. A horizontal relationship are those between an individual investor and

---

7. ... The risk to the lender increases in proportion to the amount that is borrowed in relation to the size of the borrower's business. The risk to the lender also increases in proportion to the degree to which his funds are necessary to the formation of the enterprise.
*AMFAC Mortgage Corp. v. Arizona Mall of Tempe*, 583 F.2d 426, 432 (9th Cir. 1978).

the pool of other investors. In the instant case, the promissory note entered into was solely between American Bank as holder and the Wallaces as maker. This Court believes that such an arrangement is not sufficient to constitute a common venture due to the lack of a pooling of funds. *See Union Planters National Bank, supra* at 1183.

REASONABLE EXPECTATION OF PROFITS

Profits, as defined within the context of the *Howey-Forman* test, focuses on an expectation of appreciation resulting from the development of the initial investment. *See Forman, supra* at 852–53, 95 S.Ct. at 2060–61. The Ninth Circuit cases of *United California Bank, supra,* and *AMFAC Mortgage Corp., supra,* both involved promissory notes which carried an interest rate slightly above prime. Both cases held that the repayment of principal plus a fixed rate of interest was more "indicative of a commercial lending situation than an investment of risk capital." *AMFAC Mortgage Corp., supra* at 434. Further, in *Union Planters National Bank,* the court stated that the repayment of principal plus a fixed rate of interest was not synonymous with a reasonable expectation of profits. Plaintiff cannot validly argue that it had a reasonable expectation of profits from the payment of principal and a fixed rate of interest.

PROFITS DERIVED FROM THE EFFORTS OF OTHERS

American Bank's receipt of the interest was not dependent upon the managerial or entrepreneurial efforts of others. The receipt of interest income was dependent upon the original terms of the transaction and not contingent upon Jan L. Wallace's efforts.

█ In summation, American Bank's attempt to classify the promissory note as a security must fail. "The security laws are not a panacea for commercial loans gone awry." *Union Planters National Bank v. Commercial Credit Business Loans, Inc.,* 651 F.2d 1174, 1185 (6th Cir. 1981). *See also AMFAC Mortgage Corp. v. Arizona Mall of Tempe,* 583 F.2d 426, 428 (9th Cir. 1978). Therefore, defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) will be granted. Count IV will also be dismissed under the doctrine of *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) which held, in effect, that federal claims must be substantial in order to support pendent jurisdiction over state claims. The Court is unable to find any exceptional circumstances, *see Koke v. Stifel, Nicolaus & Co.,* 620 F.2d 1340, 1346 (8th Cir. 1980). Therefore, the Court in its discretion refrains from exercising pendent jurisdiction.

IT IS THEREFORE ORDERED that defendants' motion to dismiss as to the federal claims shall be and is hereby GRANTED; Fed.R.Civ.P. 12(b)(1).

IT IS FURTHER ORDERED that the state claims shall be, and are, dismissed under the doctrine of *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

EXHIBIT "A"

**PROMISSORY NOTE**

300,000.00 _____   June 3 _____, 19 81
                                       Lexington, Kentucky

The undersigned jointly and severally if more than one (hereafter singly and collectively called the "Maker"), promises to pay to the order of American Bank and Trust Company (hereinafter called the "Holder"), a Kentucky banking corporation, at its principal office in Lexington, Kentucky, the sum of three hundred thousand _____ ( 300,000.00 _____, ) Dollars, together with interest thereon ☐ at the rate of _____ ( %) per cent per annum, or ☒ at the prime rate of interest set from time to time by the Holder, plus one and three fourths _____ (1.75%) per cent per annum, but not less than an aggregate interest of _____ ( %) per cent per annum, nor more than an _____ ( %) per cent annum, such interest as specified above to be payable until this obligation is paid in full. The interest on and principal on this obligation is payable as follows:

Principal and interest due at maturity

No delay or omission on the part of the Holder in exercising any right hereunder shall operate as a waiver of such rights or of any other right hereunder. A waiver on any one occasion shall not be construed as a bar to or waiver of any such right and/or remedy on any future occasion.

The Maker, and each endorser and guarantor hereof, hereby (a) waives presentment hereof for payment, demand, notice of nonpayment, protest and notice of protest and dishonor; (b) waives diligence in bringing suit against any and all parties hereto, including makers, endorsers and guarantors; (c) waives all defenses to the payment hereof; (d) consents to any extension or postponement as to the time of payment without limit as to the number of such extensions, or the period of periods thereof; (e) consents to any other indulgences (f) consents to the addition or release of any other parties or persons primarily or secondarily liable, (g) waives all notice of any of the above where notice might otherwise be required, and covenants and agrees that he shall remain bound upon this note notwithstanding any changes, extensions, releases or lack of notices; and (h) guarantees the payment hereof in the hands of any bona fide holder.

The Maker will pay on demand all costs of collection and attorneys' fees, incurred or paid by the Holder in enforcing this note on default.

As herein used the word "Holder" shall mean not only American Bank and Trust Company, but also any endorsee of this note, who is in possession of it, or the bearer hereof, if this note is at the time payable to the bearer.

This note and the rights and obligations of the parties hereunder shall be governed by Kentucky law.

Due Date ___July 3, 1981___

x ___/s/ E. L. Wallace___
E. L. Wallace

Address

x ___/s/ Jan L. Wallace___
Jan L. Wallace

x ___Anna Wallace___
Ann Wallace

___P.O. Box 1331___

x ___/s/ Neda H. Wallace___
Neda H. Wallace

___Lexington, Kentucky 40590___