702 F.2d 93
 Fed. Sec. L. Rep. P 99,118
AMERICAN BANK & TRUST COMPANY, Plaintiff-Appellant,
v.
Jan L. WALLACE, Wallace Motor Company, Jan Michael Wallace,
Wallace Leasing Company, Inc., E.L. Wallace, Anna L.
Wallace, Neda Wallace and First Security National Bank and
Trust Company of Lexington, Defendants-Appellees.
 No. 82-5044.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 11, 1983.
Decided March 10, 1983.
 
 J. Montjoy Trimble, Trimble & Henry and Anderson & Anderson, Lexington, Ky., for plaintiff-appellant.
 David Weinberg, William C. Shouse, Shouse & Burrus, William M. Lear, Jr., R. David Lester, Stoll, Keenon & Park, Terry Sellars, Clem & Sellars, Lexington, Ky., for defendants-appellees.
 Before KENNEDY and WELLFORD, Circuit Judges, and BROWN, Senior Circuit Judge.
 CORNELIA G. KENNEDY, Circuit Judge.
 
 
 1
 American Bank and Trust Company appeals from a judgment of the United States District Court for the Eastern District of Kentucky dismissing its action for fraud and deceit in connection with the giving of a promissory note. Appellant contends the note was procured in violation of the anti-fraud provisions of federal and state securities laws. Jurisdiction was based solely on federal security laws, Section 27 of the Securities Exchange Act of 1934 (15 U.S.C. Sec. 78aa) Section 22 of the Securities Act of 1933 (15 U.S.C. Sec. 77v). As we agree with the District Court, 529 F.Supp. 258, that the short-term (30-day) note given by the appellees to the appellant in this commercial loan transaction was not a "security" and that the federal court was without jurisdiction, we affirm.
 
 
 2
 Appellees sought to borrow $300,000.00 from appellant. Appellant alleges that in the course of the negotiations, Jan L. Wallace (Wallace) made fraudulent misrepresentations and failed to state material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading. In reliance upon Wallace's misrepresentations, appellant approved the loan and suffered money damages when appellees were unable to honor their obligation. Appellees' motions to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) was sustained as to appellant's federal claims, and the pendent state claims were consequently dismissed under the doctrine of United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The sole issue raised on appeal is whether the note purchased by American Bank from appellees is a "security" subject to the anti-fraud provisions of federal securities laws.
 
 
 3
 "The search for the definition of a 'security' must necessarily commence with the language of the statute." Union Planters National Bank of Memphis v. Commercial Credit Business Loans, Inc., 651 F.2d 1174, 1179 (6th Cir.), cert. denied, 454 U.S. 1124, 102 S.Ct. 972, 71 L.Ed.2d 111 (1981), citing Rubin v. United States, 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981). Section 3(a)(10) of the Securities Exchange Act of 1934 [15 U.S.C. Sec. 78c(a)(10) ] provides in pertinent part:
 
 
 4
 The term "security" means any note, ...; but shall not include currency or any note, ... which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.
 
 
 5
 If construed literally, the 1934 Act would cover no note, whether commercial or investment in nature, with a maturity not exceeding nine months, and would cover all notes with a maturity in excess of nine months. Courts, however, have declined to apply the letter of the law under circumstances which would violate the spirit of the law.[1] "The [1934] Act is for the protection of investors, and its provisions must be read accordingly."[2] Thus, regardless of maturity-length, notes have been subjected to the anti-fraud provisions of the 1934 Act[3] where they were investment, and not commercial, in nature.[4]
 
 
 6
 The Securities Act of 1933 differs somewhat in its handling of short-term commercial paper. As explained in Zeller, 476 F.2d at 799:
 
 
 7
 Under the 1933 Act, while Sec. 2(1) [15 U.S.C. 77b(1) ] provides that any note is a "security," Sec. 3(a)(3) [15 U.S.C. Sec. 77c(a)(3) ] exempts from the registration and prospectus requirements "[a]ny note, ..., which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited." However, Sec. 17 [15 U.S.C. 77q] the general anti-fraud provision, provides in subsection c that the exemptions of Sec. 3 shall be inapplicable.
 
 
 8
 If this language is interpreted literally, the anti-fraud provisions of the 1933 Act would apply to any note, regardless of its nature (commercial or investment) or duration (exceeding or not exceeding nine months). Courts have declined to so interpret the Act.
 
 
 9
 To expand the reach of those [federal securities] acts to ordinary commercial loan transactions would distort congressional purpose as we interpret it.
 
 
 10
 Great Western Bank & Trust v. Kotz, 532 F.2d 1252, 1260 (9th Cir.1976). Accordingly, the 30-day duration of the Wallaces' promissory note does not per se remove it from the purview of either the 1934 or the 1933 Act.
 
 
 11
 Each of the Acts includes "any note" within its definition of a "security," and at the same time limits that broad definition with the qualification that notes are securities "unless the context otherwise requires." Thus,
 
 
 12
 [t]he task has fallen to the Securities and Exchange Commission (SEC), the body charged with administering the Securities Acts, and ultimately to the federal courts to decide which of the myriad financial transactions in our society come within the coverage of these statutes.
 
 
 13
 United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 848, 95 S.Ct. 2051, 2058, 44 L.Ed.2d 621 (1975).
 
 
 14
 The circuits are split with respect to the analysis to be applied in defining a "security," although the results reached under the various suggested tests are virtually identical. Generally, the circuits have rejected a literal application of the definitional sections of the securities acts[5] and have focused upon the "economic realities" underlying the transaction. See Forman, 421 U.S. at 848, 95 S.Ct. at 2058; Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967).
 
 
 15
 In focusing on the economic realities to distinguish securities transactions from commercial dealings, the Court has used a test which, in "shorthand form":
 
 
 16
 ... embodies the essential attributes that run through all of the Court's decisions defining a security. The touchstone is (1) the presence of an investment (2) in a common venture (3) premised on a reasonable expectation of profits (4) to be derived from the entrepreneurial or managerial efforts of others.
 
 Forman, supra, at 852 [95 S.Ct. at 2060].[9]
 
 17
 Union Planters, 651 F.2d at 1180-1181.
 
 
 18
 In Union Planters, supra, at 1181-1182, this Circuit employed the "risk capital" test set forth in Kotz, supra, at 1257, to determine whether a loan participation agreement between two financial institutions constituted a "security" within the meaning of the Securities Exchange Act of 1934.
 
 
 19
 The "risk capital" test focuses on six criteria: 1) time; 2) collateral; 3) form of the obligation; 4) circumstances of issuance; 5) relationship between amount borrowed and size of borrower's business; and 6) intended use of funds.
 
 
 20
 See also United California Bank v. THC Financial Corp., 557 F.2d 1351, 1358 (9th Cir.1977). Additionally, this Circuit cited with approval Judge Wright's concurring opinion in Kotz, which suggested the approach that no note given to evidence a bank loan be considered a "security." Union Planters, supra, at 1182. Application of the risk capital test substantiates the District Court's conclusion that the Wallaces' promissory note evidenced a loan and not an investment, a commercial note and not a security. It was a short-term note--30 days. It was partially collateralized and, therefore, repayment was not totally dependent upon the Wallaces' managerial and entrepreneurial efforts. The form of the obligation was that of a typical short-term promissory note. The impetus for the transaction came from Wallace, as borrower, rather than from the bank, as investor. And, the bank was to derive only interest on its loan, not profits. The only element of this transaction which was "investment" in nature was the fact that a relatively large amount of money was being borrowed on a relatively small business. That factor is of negligible importance, however, because although the funds were to be used to start a new automobile leasing business, the loan was to be repaid from the proceeds to be derived from the sales of two other established businesses.
 
 
 21
 Applying the "commercial-investment dichotomy" of the Third, Fifth, Seventh and Tenth Circuits, the conclusion is likewise inescapable that the promissory note given to appellant was not a security. See United American Bank of Nashville v. Gunter, 620 F.2d 1108 (5th Cir.1980); National Bank of Commerce of Dallas v. All American Assurance Company, 583 F.2d 1295 (5th Cir.1978); Woodward v. Metro Bank of Dallas, 522 F.2d 84 (5th Cir.1975); McClure, supra, Zabriskie v. Lewis, 507 F.2d 546 (10th Cir.1974); Bellah v. First National Bank of Hereford, 495 F.2d 1109 (5th Cir.1974), and Lino v. City Investing Co., 487 F.2d 689 (3rd Cir.1973). As expressed in C.N.S. Enterprises, Inc. v. G & G Enterprises, Inc., 508 F.2d 1354, 1359 (7th Cir.1975):In one sense every lender of money is an investor since he places his money at risk in anticipation of a profit in the form of interest. Also in a broad sense every investor lends his money to a borrower who uses it for a price and is expected to return it one day.
 
 
 22
 On the other hand, the polarized extremes are conceptually identifiable: buying shares of the common stock of a publicly-held corporation, where the impetus for the transaction comes from the person with the money, is an investment; borrowing money from a bank to finance the purchase of an automobile, where the impetus for the transaction comes from the person who needs the money, is a loan. In between is a gray area which, in the absence of further congressional indication of intent or Supreme Court construction has been and must be in the future subjected to case-by-case treatment.
 
 
 23
 On that spectrum the transaction was clearly commercial in nature. The impetus for this transaction came from the Wallaces who wished to borrow money from American Bank and Trust Company to finance a new business. Moreover repayment of the loan was not made contingent upon the success of that business. Thus, American Bank and Trust Company was not an "investor" purchasing a "security," as those terms are defined by the 1934 and 1933 Acts.
 
 
 24
 In enacting the securities laws, Congress did not intend to provide a broad federal remedy for all fraud. Marine Bank v. Weaver, 455 U.S. 551, 556, 102 S.Ct. 1220, 1223, 71 L.Ed.2d 409 (1982); Kotz, supra, at 1253; Bellah, supra, at 1114. This commercial transaction was not within the contemplation of the drafters and, therefore, appellant could not invoke the protection of those Acts. The District Court correctly determined that American Bank and Trust Company had improperly based jurisdiction on the federal securities laws.
 
 
 25
 Accordingly, the judgment of the District Court is affirmed.
 
 
 
 [1]
 See United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 849, 95 S.Ct. 2051, 2059, 44 L.Ed.2d 621 (1975); Church of the Holy Trinity v. United States, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892); Union Planters, supra, at 1180
 
 
 [2]
 Zeller v. Bogue Electric Manufacturing Corporation, 476 F.2d 795, 800 (2d Cir.), cert. denied, 414 U.S. 908, 94 S.Ct. 217, 38 L.Ed.2d 146 (1973); Sanders v. John Nuveen & Co., Inc., 463 F.2d 1075, 1079-1080 (7th Cir.), cert. denied, 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972)
 
 
 [3]
 15 U.S.C. Sec. 78j provides:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange--
 (a) To effect a short sale, or to use or employ any stop-loss order in connection with the purchase or sale, of any security registered on a national securities exchange, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
 Rule 10b-5 provides:
 Employment of Manipulative and Deceptive Devices.
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of a national securities exchange,
 (1) to employ any device, scheme or artifice to defraud,
 (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (3) to engage in any act, practice or course of business, which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
 
 
 [4]
 See Bellah v. First National Bank, 495 F.2d 1109, 1112 (5th Cir.1974) and cases cited therein
 This reasoning gives due recognition to the Supreme Court's admonition in S.E.C. v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 195, 84 S.Ct. 275, 284, 11 L.Ed.2d 237 (1963) that anti-fraud securities legislation is to be read "not technically and restrictively, but flexibly to effectuate its remedial purposes," and is compatible with that expressed in S.E.C. v. C.M. Joiner Leasing Corporation, 320 U.S. 344, 350-351, 64 S.Ct. 120, 123, 88 L.Ed. 88 (1943):
 "However well these rules [of statutory construction] may serve at times to aid in deciphering legislative intent, they long have been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose, will read text in light of context and will interpret the texts so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy." (footnote omitted).
 The effect of judicial interpretation on the 1934 Act was explained in McClure v. First National Bank of Lubbock, Texas, 497 F.2d 490, 495 (5th Cir.1974), reh'g denied, 502 F.2d 1167 (5th Cir.), cert. denied, 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402 (1975):
 We realize that our holding today that the Act does not apply to commercial notes of a longer duration than nine months, taken with the decisions voiding the short-term exemption as to investment paper, virtually writes that exemption out of the law. On one hand, the Act covers all investment notes, no matter how short their maturity, because they are not encompassed by the "any note" language of the exemption. On the other hand, the Act does not cover any commercial notes, no matter how long their maturity, because they fall outside the "any note" definition of a security. Thus, the investment or commercial nature of a note entirely controls the applicability of the Act, depriving of all utility the exemption based on maturity-length. The original scrivener of the definitional section may well wonder what happened to his carefully drawn exemption on the way to the courthouse, but if the judicial decisions do not properly reflect the intent of Congress as to the coverage of the Act, only that body can properly rectify the situation at this point, if stare decisis is to apply and the Supreme Court does not make some definitive decision contrary to the presently decided cases.
 
 
 [5]
 But see, Exchange National Bank of Chicago v. Touche Ross & Co., 544 F.2d 1126 (2d Cir.1976), where Judge Friendly, writing for the Second Circuit deviated from the "commercial investment dichotomy" employed in Movielab, Inc. v. Berkey Photo, Inc., 452 F.2d 662 (2d Cir.1971) and Zeller, supra, and stated that "the best alternative now available may lie in greater recourse to the statutory language." Id., at 1137. Accordingly, he focused upon the "any note" and "unless the context otherwise requires" language of the acts to conclude that
 "One can readily think of many cases where ['the context otherwise requires']--the note delivered in consumer financing, the note secured by a mortgage on a home, the short-term note secured by a lien on a small business or some of its assets, the note evidencing a "character" loan to a bank customer, short-term notes secured by an assignment of accounts receivable, or a note which simply formalizes an open-account debt incurred in the ordinary course of business (particularly if, as in the case of the customer of a broker, it is collateralized). When a note does not bear a strong family resemblance to these examples and has a maturity exceeding nine months, Sec. 10(b) of the 1934 Act should generally be held to apply." (footnote omitted)
 Id. at 1138.
 
 
 [9]
 The genesis of this test is SEC v. W.J. Howey Co., 328 U.S. 293, 301 [66 S.Ct. 1100, 1104,90 L.Ed. 1244] (1946)