**Gerald T. ODOM, Plaintiff-Appellant,**

v.

**Joseph F. SLAVIK, Stephen F. Slavik, Sr., The Slavik Company and Slavik Investors, Defendants-Appellees.**

**No. 81–1795.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 18, 1983.

Decided March 23, 1983.

Donald F. Tucker (argued), Simon, Deitch, Siefman & Tucker, Southfield, Mich., for plaintiff-appellant.

Abba I. Friedman (argued), Robert Friedman, Hyman, Gurwin, Nachman, Friedman, Southfield, Mich., for defendants-appellees.

Before MARTIN and JONES, Circuit Judges and PECK, Senior Circuit Judge.

PER CURIAM:

Plaintiff, Gerald Odom, appeals from a judgment below dismissing, for lack of jurisdiction, his case alleging, *inter alia,* a violation of the federal securities law. He contends on appeal that the district court erred when it ruled that his partnership interest in an enterprise called Essex at Hampton was, as a matter of law, not a security under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* Though we believe that the court erred in dismissing the case for lack of jurisdiction, we affirm the district court insofar as it held that the plaintiffs interest is not a security.

I.

The Slavik Company, a Michigan corporation involved in the promotion of residential housing and real estate projects, is owned and controlled by Joseph and Stephen Slavik. Gerald Odom, the plaintiff-appellant, worked for that company prior to 1977. He is, it appears, experienced in the management and development of real estate.

The agreement which forms the basis of the plaintiff's claim to have been defrauded in violation of the Exchange Act involves the Slavik Company's plan to develop a community called Essex at Hampton. Some time in January 1976, Joseph Slavik and Gerald Odom had conversations concerning this development. The appellant describes these conversations as meetings in which the Slaviks offered and proposed that he share in the partnership to develop Essex; the appellees contend that Odom demanded that he be given a share in the project. In any event, these meetings gave rise to the partnership called Essex at Hampton.

In June of 1976, a partnership agreement was executed with Gerald Odom and the Slavik Company as general partners. Odom had a one percent interest in the partnership, while the Slavik Company received four percent. The limited partners, yet to become part of the venture, were to have 95% interest collectively. At the execution of the contract, Odom made his proportionate share of the capital contribution, $50.00.

That summer, a construction contract was executed and the partnership engaged in a series of public offerings of the limited partnership interests. The private placements of these interests amassed $1,620,000. for the project.

Some time in February 1978, the partnership agreement was amended. Slavik Investors, a Michigan partnership of Joseph and Stephen Slavik, was added as a general partner. The Slavik Company and the Slavik Investors partnership shared the four percent general partnership interest, giving them, collectively, an 80% share. After this and a second amendment, the agreement specified that an action of any two general partners would bind the partnership. In essence, this meant that Gerald Odom could not control the partnership business. Joseph and Stephen Slavik, through the Slavik Company and Slavik Investors, had effective control over the project.

This suit was filed because Gerald Odom believed that he had been fraudulently frozen out of the partnership and denied his share and control of the business. Odom's complaint alleged six counts of violation of state law and one count of violation of the Securities Exchange Act's anti-fraud provision, 15 U.S.C. 78j [Securities Exchange Act § 10] and Rule 10(b)–5 promulgated thereunder. The jurisdiction of the federal court was premised upon § 27 of the 1934 Act, 15 U.S.C. 78aa, for the federal claim and pendent jurisdiction for the state law claims.

In a motion dated July 2, 1979, the appellees moved to dismiss the plaintiff's action, alleging that the federal claim was frivolous and merely a subterfuge to bring the

pendent state claims into federal court. The district court denied the motion on September 11, 1979. For the next two years, the parties engaged in discovery.

On October 5, 1981, the defendant filed a motion captioned a motion for judgment on the pleadings, alleging, among other things, that the interest claimed was not a security under the '34 Act. The motion was made pursuant to F.R.Civ.P. Rule 12(c), and the court, as permitted, considered the motion as a Rule 56 motion for summary judgment. The judge found that the partnership interest Odom had acquired under the Essex at Hampton agreement was not a security under the '34 Act. He ruled that "the court finds no genuine issue of material fact exists, and concludes that it has no subject matter jurisdiction." [App. at 96]. Because it dismissed the federal cause of action for lack of jurisdiction, the district court also dismissed the state claims.

The appellant motioned the court to reconsider this ruling, but was denied. It is from this order that the appellant takes this appeal.

## II.

The threshold issue in this case is whether the district court was correct to conclude, as a matter of law, that the partnership interest Odom possessed under the agreement is not a security. The Exchange Act in § 3(a)(10) defines a "security" as follows:

The term "security" means any note, stock, treasury stock, bond debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's ac-

ceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

Plaintiff contends that the district court erred in holding that the partnership interest Odom acquired in Essex at Hampton was not an "investment contract" within the meaning of "security."

The seminal case concerning whether an investment contract is a security is *SEC v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). In that case, decided under the Securities Act of 1933, the Supreme Court held that an offering for sale of individual rows of trees in an orange grove development, coupled with a contract for cultivating and marketing the trees and a scheme for remitting the net profits to the "owner", was an investment contract. It stated the now well used test for determining whether an investment contract is a security:

In other words, an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of a promoter or a third party. 328 U.S. at 298–99, 66 S.Ct. at 1102–1103.

The three part *Howey* test requires that there be (1) an investment of money; (2) in a common enterprise; and (3) on an expectation of profits that will be derived solely from the efforts of others. Though decided under the '33 Act, the Supreme Court has made clear that the definitions under the '33 and '34 Act are "virtually identical." *Tcherepnin v. Knight,* 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967).

In the case at bar, there is no dispute that the partnership agreement and scheme meets the first two prongs of the *Howey* test. The issue, then, is whether the agreement creates an expectation of profits solely from the efforts of others.

Literally read, *Howey's* formulation of the test would exclude any enterprise in

which the "investor" had any role in the enterprise. In that case, the profits would not be "solely" from the efforts of others. Yet, the Supreme Court has warned that the coverage of the act would not be governed by labels or strict technical readings of the terms. *United Housing Foundation v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975). Instead, the economic realities of the situation will govern. *Id.*

Heeding *Forman's* warning, several courts have noted that "solely" is not to be read strictly. Rather, when the functions the "investor" performs are not significant managerial ones, but mere ministerial ones, the schemes will not be excluded from the coverage of the act merely because the profits are not derived, in some strict sense, *solely* from the efforts of others. *SEC v. Turner Enterprises,* 474 F.2d 476 (9th Cir. 1973) *cert. denied* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973); *SEC v. Koscot,* 497 F.2d 473 (5th Cir.1974); *Union Planters National Bank v. Commercial Credit,* 651 F.2d 1174, 1181 n. 9 (6th Cir.1981) [recognizing this view among the circuits].

The appellant urges that under this standard he is entitled to the protection of the anti-fraud provisions of the '34 Act. He contends, that at a minimum, he has established an issue of material fact in dispute as to whether his general partnership interest is merely a nominal one. He asserts that he was effectively prevented from exercising any managerial functions.

■ Normally, a general partnership interest is not considered a "security". *New York Stock Exchange v. Sloan,* 394 F.Supp. 1303 (S.D.N.Y.1975); *Hirsch v. Dupont,* 396 F.Supp. 1214 aff'd 553 F.2d 750 (2nd Cir. 1977); *Williamson v. Tucker,* 645 F.2d 404 (5th Cir.1981). The managerial powers vested in general partners and the express right of inspection of documents gives them the kind of leverage and ability to protect themselves that takes them outside the intended scope of the '34 Act. *See Hirsch v. Dupont, supra; Williamson v. Tucker, supra.*

The appellant, however, contends that the court should not have ruled *as a matter of law.* In *Williamson,* the Fifth Circuit noted that there will be cases in which a general partner can show, by meeting a substantial burden of proof, that "in spite of the partnership form which the investment took, he was so dependent on the promoter of the third party that he was in fact unable to exercise meaningful partnership powers..." 645 F.2d at 423. The court noted:

> A general partnership or joint venture interest can be designated a security if the investor can establish, for example, that (1) an agreement among the parties leaves so little power in the hands of the partner or venturer that the arrangement in fact distributes power as would a limited partnership; or (2) the partner or venturer is so inexperienced and unknowledgeable in business affairs that he is incapable of intelligently exercising his partnership or venture powers; or (3) the partner or venturer is so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that he cannot replace the manager of the enterprise or otherwise exercise meaningful partnership or venture powers.

645 F.2d at 424.

■ We have examined the record in this case carefully. We agree with the district court that there is no issue of material fact in dispute which would establish that Odom did not have the *power* under the agreement to exercise his partnership functions. Odom was merely a minority partner who could not control the outcome of partnership business. That his partners did not inform him of their decisions may be a violation of state partnership law, but in the context of this case does not constitute such a deprivation of meaningful partnership authority that his interest becomes a security.

■ The fatal flaw in the appellant's argument is the failure to recognize that the anti-fraud provisions were not intended to remedy every instance of common law fraud. *Marine Bank v. Weaver,* 455 U.S. 551, 556, 102 S.Ct. 1220, 1223, 71 L.Ed.2d 409 (1982). Nor are they to remedy every wrong that occurs in a partnership scheme.

Where, as here, the general partner has expertise in the field, has voluntarily entered into a partnership scheme where he is the minority interest, and there is no evidence that he lacks the *power* under the agreement and the state partnership laws to *participate* in the partnership affairs, the defendant has not overcome his burden of showing that his partnership interest is, in effect, a limited one. We note, however, that there is *no evidence* which shows anything other than that the defendants have breached the agreement and violated the partnership laws. Had there been evidence which tended to show that the *powers* enumerated in the partnership were merely nominal because, let's say, the plaintiff was dependent for expertise upon the defendants, this would be a different case. We are aware that there is a fine line between cases which constitute merely breach of contract on state partnership laws and those, contemplated in *Williamson,* where the economic realities are such that the powers granted the general partner are merely nominal. Of course, evidence which shows that the defendant partners could adequately freeze out the plaintiff is probative of the economic realities involved. Here, however, the evidence does not, in our view, overcome the presumption that Odom is a general partner.

We hold therefore, that the district court did not err in finding that, as a matter of law, the partnership agreement and scheme did not create a security.

### III.

██ One final issue must be addressed. The district court, upon determination that the partnership scheme did not create a security, dismissed the case for lack of jurisdiction. This was error.

When as here, an issue concerning an element of the offense or cause of action is also an element of jurisdiction, the Supreme Court has explicitly held that there is a strict standard for dismissals for lack of subject matter jurisdiction. *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1945). In *Bell,* the Court held that jurisdiction should be maintained except "that a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial or frivolous." 327 U.S. at 682, 66 S.Ct. at 776.

Here, the issue as to whether the partnership interest is a security is determinative of both the jurisdictional issue and the merits of the claim. Under *Bell,* the court must assert jurisdiction unless the federal claim is insubstantial or frivolous to the point that it clearly was intended merely to obtain jurisdiction over the state claims. *See Williamson v. Tucker, supra.* The district court specifically rejected that contention when it ruled on the defendants' motion to dismiss in September 1979. It was error, then, to dismiss for lack of jurisdiction.

Since the court also correctly found that there were no issues of material fact in dispute upon which the plaintiff could prevail on his legal theory, the court should have merely granted Rule 56 motion for summary judgment to the defendants. *United States v. 9.6 Acres of Land,* 456 F.2d 1116 (6th Cir.1972). The case is therefore remanded for the district court to modify its order accordingly.