**Ronald E. ROARK, et al., Plaintiffs,**

v.

**BELVEDERE, LTD. et al., Defendants.**

**Civ. No. C–1–85–840.**

United States District Court, S.D. Ohio, W.D.

Nov. 19, 1985.

---

Gary D. Greenwald, Columbus, Ohio, for plaintiffs.

Stanley Goodman, Michael G. Kohn, Frank Cunningham, Sylvan Reisenfeld, Cincinnati, Ohio, for defendants.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court on defendant's Motion to Dismiss (doc. nos. 7, 11) and on defendant Univest Corporation's Motion to Name an Additional Party Defendant (doc. no. 9). Plaintiffs brought this action under the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq. and have asserted pendent Ohio claims.

## I. FACTS

The plaintiffs in this action are Ronald E. Roark (Roark), R.E. Roark Companies, Inc. (Roark, Inc.), and Belhill, Ltd. (Belhill). The defendants are Belvedere, Ltd. (Belvedere), Univest Corporation (Univest), Oak Street Square, Ltd. (Oak Street Square)[1] and B.W. Morris (Morris), Tom D. Isaac (Isaac),

Dr. Harvey I. Sloane (Sloane) and Carson P. Porter (Porter), who have ownership interest in Univest or Oak Street Square. Plaintiff Belhill, an Ohio limited partnership was created in December, 1981 to develop, finance and sell condominium units in the Belvedere Condominiums in Cincinnati, Ohio. Plaintiff Roark, Inc. was the sole general partner of Belhill and defendant Belvedere was its sole limited partner. Belvedere is an Ohio general partnership with Univest, Oak Street Square and Kenneth C. Segal (Segal)[2] as its partners.

The parties to this action along with Segal entered into an agreement to form a limited partnership. (Doc. no. 1, Exhibit 1). In return for the exercise of Roark's skill and expertise as a developer and arranger of financing, Roark, Inc. was named general partner with a 20% interest in Belhill. Belvedere, the prior owner of the condominium project became the limited partner with an 80% interest. Among the assets transferred to Belhill were promissory notes executed by the buyers of pre-sold units to Belvedere.[3] The agreement also provided that Belhill would assume certain existing liabilities set forth in an attachment to the agreement while Belvedere would retain all other liabilities incurred on the project prior to the execution of the agreement. In addition, Roark, Inc. was obligated to procure an interim construction loan in the amount of $2,200,000 and a permanent take-out loan commitment in the amount of $3,800,000. Segal along with defendants Morris, Sloane, Isaac and Porter were to be guarantors of the permanent take-out loan. (*See* Doc. no. 1 Exhibit 2 at § 8.01).

On December 22, the Limited Partnership Agreement was executed. (Doc. no. 1 Exhibit 2). An interim loan commitment was obtained from Fifth Third Bank as well as a take-out loan commitment from Phenix Federal Savings & Loan Associa-

---

1. The correct name of this party is Oak Street Square, Inc., although the complaint refers to it as Oak Street Square, Ltd.

2. Plaintiffs filed an almost identical action in Hamilton County Common Pleas Court in which Segal and Fifth Third Bank were also defendants.

3. These notes were listed as "Notes Receivable" in an attachment to the Limited Partnership Agreement. (*See* Doc. no. 1, Exhibit 2, Schedules 2 & 3).

tion. Subsequently, the interim loan was closed and Phenix Federal refused to complete the take-out loan.

Plaintiffs assert that defendant failed to disclose certain liabilities of Belvedere relating to the completion of some condominium units. Plaintiffs also assert that defendants failed to live up to the agreement to act as guarantors. Thus, plaintiffs claim breach of contract, fraud and violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10(b)-5, 17 C.F.R. 240 § 10(b)-5.

## II. SECURITIES EXCHANGE ACT CLAIM

Defendants contend that the Court lacks jurisdiction over this matter because there is no federal question and the parties are not diverse.[4] Defendants assert that the matter does not involve the sale of a security and that therefore plaintiffs fail to state a cause of action under the Securities Exchange Act of 1934. Plaintiffs claim that Roark, Inc.'s interest in Belhill is a security as are the promissory notes issued to Belvedere and transferred to Belhill incident to Belhill's creation. For the following reasons, the Court holds that neither Roark, Inc.'s general partnership interest in Belhill nor the promissory notes transferred to Belhill under the Limited Partnership Agreement are securities for purposes of the 1934 Act.

### A. General Partnership Interest

The 1934 Act in § 3(a)(10) defines a security as follows:

> The term "security" means any note, stock, treasury stock, bond debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, trans-

ferable share, investment contract, voting trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

"Normally, a general partnership interest is not considered a 'security'." *Odom v. Slavik,* 703 F.2d 212, 215 (6th Cir.1983); *Williamson v. Tucker,* 645 F.2d 404 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). Plaintiff contends, however, that under these circumstances, Roark, Inc.'s partnership interest in Belhill is an investment contract within the meaning of security. The Court does not agree. The test to be applied to determine whether a particular interest is an investment contract for purposes of federal securities law was set out in *SEC v. W.J Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). *See Landreth Timber Co. v. Landreth,* —— U.S. ——, 105 S.Ct. 2297, 2305, 85 L.Ed.2d 692 (1985).

The three part *Howey* test requires: (1) an investment of money; (2) in a common enterprise; (3) on an expectation of profits that will be derived solely from the efforts of others. 328 U.S. at 298–99, 66 S.Ct. at 1102–03.[5] In *United Housing Foundation v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), the Supreme Court liberalized the third prong of the test to substitute "primarily" for "solely" in recognition that the economic realities of the situation should govern. In the present case,

---

**4.** It is agreed that parties lack diversity since Belvedere, Morris and Oak Street Square are all Ohio persons.

**5.** Although *Howey* was decided under the 1933 Act, the Supreme Court has made it clear that the definition of a security under the 1933 and

1934 Act are virtually identical. *Landreth,* 105 S.Ct. at 2302 n. 1; *Marine Bank v. Weaver,* 455 U.S. 551, 555 n. 3, 102 S.Ct. 1220, 1223 n. 3, 71 L.Ed.2d 409 (1982); *Tcherepnin v. Knight,* 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967).

Roark, Inc.'s general partnership interest fails to meet even the liberalized *Howey-Forman* test. In some cases, a general partner can meet the third prong of the *Howey-Forman* test by showing that in spite of the form of the partnership, he was so dependent upon another party that he was in fact unable to exercise meaningful managerial powers. However, the general partner must meet a substantial burden of proof. *Odom v. Slavik*, 703 F.2d at 215 (citing, *Williamson v. Tucker*, 645 F.2d at 423). The Sixth Circuit in *Odom* recognized the following factors set out in *Williamson* as determinative of a general partner's lack of power:

(1) [A]n agreement among the parties leaves so little power in the hands of the partner or venturer that the arrangement in fact distributes power as would a limited partnership; or (2) the partner or venturer is so inexperienced and unknowledgeable in business affairs that he is incapable of intelligently exercising his partnership or venture powers; or (3) the partner or venturer is so dependent on some unique entreprenurial or management ability of the promoter or manager that he cannot replace the manager of the enterprise or otherwise exercise meaningful partnership or venture powers.

703 F.2d at 215 (quoting *Williamson*, 645 F.2d at 424).

■ Nothing in the Agreement to Form a Limited Partnership nor in the Limited Partnership Agreement itself so restricts Roark, Inc.'s actions that he cannot exercise meaningful managerial powers. In fact, the Limited Partnership Agreement in § 5.03 provides: "The General Partner shall have the authority on behalf of the Limited Partnership to conduct any and all Limited Partnership business...." Moreover, plaintiffs cannot claim that Roark is so inexperienced and unknowledgeable in the real estate development business because his sole contribution in return for a 20% interest in the partnership was his "skill and expertise". (Doc. no. 1 Exhibit 2 at § 3.01). Likewise, plaintiffs cannot claim that Roark was dependent on some other manager because he was the sole manager of the enterprise. Plaintiffs claim, rather, that defendants obstructed Roark's ability to manage the enterprise by failing to meet their obligations under the Agreement. While this may constitute a breach of contract claim under state law, the undisputed facts do not indicate that Roark, through Roark, Inc., was so deprived of meaningful partnership authority as to render the general partnership interest a security. *See Odom v. Slavik*, 703 F.2d at 215.

The federal securities law's anti-fraud provisions were not intended to remedy every instance of common law fraud or breach of contract. *Marine Bank v. Weaver*, 455 U.S. 551, 556, 102 S.Ct. 1220, 1223, 71 L.Ed.2d 409 (1982). Here the Limited Partnership Agreement explicitly grants the general partner full power and there is no indication that the general partner lacks expertise in the business. Therefore, plaintiffs have failed to overcome the presumption that Roark, Inc.'s general partnership interest is not a security. *Odom v. Slavik*, 703 F.2d at 216; *Williamson*, 645 F.2d at 423.

**B. Promissory Notes**

The 1934 Act in § 3(a)(10) provides that "unless the context otherwise requires," a "security" includes any note except those notes with maturities of nine months or less.[6] Courts have interpreted the "unless the context otherwise requires" language to consider the economic reality surrounding the issuance of the note regardless of its maturity. *See, e.g., Marine Bank v. Weaver*, 455 U.S. 551, 556, 102 S.Ct. 1220, 1223, 71 L.Ed.2d 409 (1981); *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 938 (2d Cir.1984); *Union Planters National Bank v. Commercial Credit Busi-*

---

**6.** The notes in question were issued by purchasers of pre-sold condominium units to Belvedere as a part of the financing arrangement for the units. Each note had a fixed interest rate and a maturity of approximately two years.

*ness Loans, Inc.,* 651 F.2d 1174, 1180 (6th Cir.), *cert. denied,* 454 U.S. 1124, 102 S.Ct. 972, 71 L.Ed.2d 111 (1981); *State of Ohio v. Crofters,* 525 F.Supp. 1133 (S.D.Ohio 1981). Although the Supreme Court recently has held that the *Howey* test for a security, *see supra* at 767, should not be applied to traditional stock, *Landreth Timber Co. v. Landreth,* —— U.S. ——, 105 S.Ct. 2297, 2306, 85 L.Ed.2d 692 (1985), the Court recognized the "concern that treating stock as a specific category of 'security' provable by its characteristics means that other categories listed in the statutory definition, such as notes, must be treated the same way." *Id.* 105 S.Ct. at 2305–06. Thus the Court noted that "[a]lthough we do not decide whether coverage of notes or other instruments may be provable by their name and characteristics, we do point out several reasons why we think stock may be distinguishable from most if not all of the other categories listed in the Acts' definition." *Id.* at 2306.

Among the distinguishing characteristics of stock noted by the Court are that (1) even untrained investors consider "stock" the paradigm of a security; and that (2) "stock" is easily identifiable because it lends itself to consistent definition. *Id.* These attributes are absent from "notes" which are "instruments with widely varying characteristics, depending on whether issued in a consumer context, as commercial paper, or in some other context." *Id.* Thus, although the Supreme Court refrained from deciding how notes should be dealt with, the implication is that the entire transaction involving a note should be examined to determine if the note is indeed a security.

Even the Second Circuit, which takes a "literalist" approach to interpreting the statutory definition of a security, has recognized that notes issued in a purely commercial context are not securities. *Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930, 939 (2d Cir.1984) (however, party asserting that a note with a maturity exceeding nine months is not a security within 10(b) has that burden of demonstrating that the context otherwise requires); *see*

*also Exchange National Bank v. Touche Ross & Co.,* 544 F.2d 1126 (2d Cir.1976). The Sixth Circuit, on the other hand, has taken an "antiliteralist" approach in determining whether a note is a security and has looked to the economic reality of the situation. *American Bank & Trust Co. v. Wallace,* 702 F.2d 93 (6th Cir.1983); *Union Planters National Bank,* 651 F.2d at 1180; *State of Ohio v. Crofters,* 525 F.Supp. at 1136.

In the present case, plaintiffs do not argue that the underlying promissory notes issued to Belvedere by the buyers of presold condominium units to finance those units are securities. (*See* doc. no. 16 at 11). Indeed, courts repeatedly have found that notes issued in such commercial transactions are not securities. *E.g., Davis v. Avco Financial Service, Inc.,* 739 F.2d 1057, 1063 (6th Cir.1984); *Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d at 939; *Williamson v. Tucker,* 645 F.2d 404, 428–29 (5th Cir.1981); *Great Western Bank & Trust v. Kotz,* 532 F.2d 1252, 1260–62 (9th Cir.1976). Rather, plaintiffs contend that the transfer from Belvedere to Belhill of these notes as a part of the Limited Partnership Agreement constitutes a sale of a security under the 1934 Act.

The Supreme Court in *Landreth Timber Co.,* 105 S.Ct. at 2304, determined that the transfer of all outstanding stock in the sale of a business falls under the federal securities laws. The Court was not confronted with the issue of whether the transfer of promissory notes in conjunction with the transfer of assets and liabilities to a newly formed partnership involved the sale of securities, but, as noted above, the Court did imply that notes may be treated differently from stock. *Id.* at 2306; *see supra* at 769. Nor have other federal courts squarely confronted this issue. However, in *Williamson,* 645 F.2d at 428–29, the Fifth Circuit ruled that promissory notes issued in return for joint venture interests in a parcel of undeveloped real estate were not securities. The court stated that the purpose of the note was not its acquisition as an investment, rather its purpose was

commercial in nature, i.e. to finance the sale of the property. *Id.* at 428. The Sixth Circuit generally has focused on the first prong of the *Howey* test to determine if a note is a security in a particular context. *American Bank & Trust Co.,* 702 F.2d at 96; *Union Planters National Bank,* 651 F.2d at 1180–81. That prong requires the presence of an investment. *SEC v. W.J. Howey Co.,* 328 U.S. at 301, 66 S.Ct. at 1104; *see also United Housing Foundation, Inc. v. Forman,* 421 U.S. at 852, 95 S.Ct. at 2060.

The promissory notes in the present case were not transferred to Belhill "for speculation or investment" *Union Planters National Bank,* 651 F.2d at 1182. Rather, the transfer was merely an individual commercial transaction. The terms of the partnership agreement by which the assets were transferred were negotiated face-to-face by the parties. Neither the notes nor partnership interests were meant to be traded publicly. *See Marine Bank v. Weaver,* 455 U.S. at 560 n. 10, 102 S.Ct. at 1225 n. 10 (citing with approval *Great Western Bank & Trust,* 532 F.2d at 1260–62, for its holding that "agreement, negotiated one-on-one by the parties, is not a security."); *accord Chemical Bank,* 726 F.2d at 938 and n. 14; *State of Ohio v. Crofters,* 525 F.Supp at 1137 ("obligations issued to a single party instead of a large class of investors is suggestive of the nature of financing").

■ The economic reality of the situation indicates that this face-to-face agreement to transfer promissory notes as a part of the assets and liabilities of Belvedere to Belhill was a commercial transaction. For the foregoing reasons, the Court holds that neither the promissory notes themselves nor the agreement to and subsequent transfer of the promissory notes involves a transaction in securities under the 1934 Act.

## III. CONCLUSION

The Court declines to find that plaintiffs' federal claims are so insubstantial or frivolous that they were clearly intended mere-

ly to obtain jurisdiction in federal court and therefore does not dismiss this action for lack of subject matter jurisdiction. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1945); *Odom v. Slavik,* 703 F.2d 212, 216 (6th Cir.1983). However, because the issue of whether a security exists is determinative of both jurisdiction and the merits of the claim, the Court will consider defendants Motions as Rule 56 Motions for Summary Judgment. *Odom v. Slavik,* 703 F.2d at 216; *United States v. 9.6 Acres of Land,* 456 F.2d 1116 (6th Cir.1972).

Therefore, because no material facts are at issue and because as a matter of law neither Roark, Inc.'s general partnership interest nor the transferred promissory notes are securities under the 1934 Act, the Court grants defendants' Motions for Summary Judgment on the federal securities claims. Furthermore, since plaintiffs' federal claims are hereby dismissed, the Court declines to exercise pendent jurisdiction over plaintiffs' state law claims and those claims are also dismissed. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Finally, since plaintiffs' claims are dismissed, it is not necessary to address defendant Univests' Motion to Name an Additional Party Defendant.

IT IS SO ORDERED.